PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAY LEWIS BIGGS, ) | |
| ) | CASE NO. 5:11CV00292 |
| Petitioner, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| JOHN COLEMAN, *Warden*, ) | |
| ) | **MEMORANDUM OF OPINION &** |
| Respondent. ) | **ORDER** [Resolving ECF No. 1] |

Before the Court is *pro se* Petitioner Jay Lewis Biggs' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent John Coleman ("the State") filed a return of writ. ECF No. 14. Petitioner filed a traverse. ECF No. 15. United States Magistrate Judge William H. Baughman, Jr., prepared a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B), and recommended that the habeas petition be denied. ECF No. 21. Petitioner filed six objections to the report and recommendation. ECF No. 23. The Court has reviewed the above filings, the relevant portions of the record, and the governing law. For the reasons provided, the Court overrules all objections, adopts the report and recommendation, and denies the habeas petition.

## I. Factual & Procedural History

### A. State Court Proceedings

In 2008, Petitioner was indicted and tried in the Stark County Court of Common Pleas for the rape and murder of his four month-old daughter. ECF No. 14-1 at 92. A jury found petitioner guilty, and, on December 5, 2008, the trial court sentenced him to life in prison without the

possibility of parole. ECF No. 14-1 at 92.

Petitioner appealed to the Ohio Court of Appeals, Fifth Appellate District, and raised one assignment of error, which asserted that the trial court's finding of guilt was "against the manifest weight of the evidence" and "was not supported by sufficient evidence." ECF No. 14-1 at 92. The appeals court concluded that the State presented sufficient evidence at trial for the jury to make three essential factual determinations: (1) that Petitioner's four month-old daughter was vaginally raped on the night of June 4-5, 2006; (2) that the child then died as a result of asphyxia by the hands of another, and not from some other cause; and (3) that Petitioner raped his daughter and then smothered her. ECF No. 14-1 at 97, 99, and 100-101. Thus, the appeals court denied the sole assignment of error and affirmed the judgment of the trial court. ECF No. 14-1 at 101.

Petitioner then appealed to the Supreme Court of Ohio, raising a single proposition of law: "The State cannot convict a defendant without proving every element of the offense beyond a reasonable doubt to the jury." ECF No. 14-1 at 106. The Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. ECF No. 14-1 at 132. The record does not indicate that Petitioner sought a writ of certiorari from the United States Supreme Court.

While Petitioner's motion for leave to appeal was pending before the Supreme Court of Ohio, he filed a motion under Ohio Appellate Rule 26(B) to reopen his direct appeal on the grounds of ineffective assistance of appellate counsel. ECF No. 14-1 at 133. The claims were rejected by the Fifth Appellate District. ECF No. 14-1 at 340. The Fifth Appellate District found that Petitioner's appellate counsel was not deficient and denied the Rule 26(B) application. ECF No 14-1 at 340. The record does not indicate that Petitioner appealed that decision to the Ohio Supreme Court.

### B. Federal Habeas Proceedings

Petitioner timely filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He asserts a single ground for relief: "Ground One: 'Manifest Weight' State[] cannot convict defendant without proving every element of the offense beyond a reasonable doubt to the jury."[1] ECF No. 1 at 5.

In the return of writ, the State raises three alternative bases for resolution of Petitioner's single claim for relief. First, the State argues that the claim should be dismissed because the assertion that a conviction is not supported by the "manifest weight" of the evidence is a non-cognizable state law claim. ECF No. 14 at 7. Next, the State contends that to the extent the petition is somehow based on theories presented in Petitioner's Rule 26(B) application, those claims are procedurally defaulted. ECF No. 14 at 16-18. Lastly, the State maintains that because the Ohio Court of Appeals directly addressed the issue of sufficiency of the evidence under clearly established United States Supreme Court precedent, namely, *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the decision of the appeals court to deny the claim should be accorded deference because the appeals court did not unreasonably apply *Jackson*. ECF No. 14 at 30.

Petitioner filed a traverse contending that his claim in regard to "manifest weight" should be construed leniently to include an argument regarding the insufficiency of the evidence. ECF No. 15 at 1-4. In addition, Petitioner clarified that he "has not/will not attempt to bring" a claim raised in his Rule 26(B) application. ECF No. 15 at 4. He asserts that the Court should review the ground for relief presented in the habeas petition on the merits. ECF No. 15 at 4.

---

[1] Petitioner initially also included a claim of actual innocence. ECF No. 1-1 at 30. The Court granted Petitioner's motion to amend the petition to withdrawn this claim. ECF No. 20.

The United States magistrate judge issued a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and recommended that the Court deny the habeas petition.  ECF No. 21.  In so doing, the magistrate judge concluded only that the Ohio Court of Appeals did not unreasonably apply *Jackson* in determining that the jury was presented with sufficient evidence to convict Petitioner of rape and murder.  ECF No. 21 at 14-17.  The magistrate judge did not address the merits of the State's other arguments.  He reasoned that Petitioner's "manifest weight" claim is plainly anchored to a claim of insufficiency of the evidence, and there was no need to consider whether any of Petitioner's arguments were procedurally defaulted because Petitioner clarified in the traverse that he was not bringing any claims raised in the Rule 26(B) application.  ECF No. 21 at 14.

Thereafter, Petitioner filed six objections to the magistrate judge's report and recommendation.  ECF No. 23.  After setting forth the appropriate standards by which the habeas petition is to be adjudicated, the Court will examine each objection raised by Petitioner.

## II. <u>Legal Standard</u>

### A. AEDPA

"[T]he writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness." *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (internal quotations omitted).  Although the scope of the writ has varied throughout our country's history, today "it is designed to guard against extreme malfunctions in the state criminal justice systems." *Jackson v. Virginia*, 443 U.S. 307, 333, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring).  The United States Supreme Court "has been guided by the proposition that the writ should be available to afford relief to those 'persons whom society has grievously wronged' in light of modern concepts of justice." *Kuhlmann*

*v. Wilson*, 477 U.S. 436, 447, 106 S. Ct. 2616, 91 L. Ed. 2d 346 (1986) (*quoting Fay v. Noia*, 372 U.S. 391, 440-41, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)).

Congress has prescribed, however, clear limits on the granting of the extraordinary relief afforded by the writ of habeas corpus. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus with respect to any claim that was decided on the merits in state court proceedings unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As interpreted by the United States Supreme Court:

> [u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* Court emphasized that a court making the "unreasonable application" inquiry may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal habeas court should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*

*v. Richter*, \_\_ U.S. \_\_, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). Stated differently, in order to obtain federal habeas relief, a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. "This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt . . . ." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citation omitted; internal quotations omitted).

### B. Recommendation of the United States Magistrate Judge

A federal district court may designate a magistrate judge to submit recommendations for the disposition of a habeas petition. 28 U.S.C. § 636(b)(1)(B). Where an objection is filed, the federal district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C).

### III. Discussion

Petitioner raises six objections to the magistrate judge's report and recommendation. *See* ECF No. 23. First, Petitioner complains that the magistrate judge granted the State's motion for an extension of time to file a return of writ before Petitioner had an opportunity to file an opposition. Second, Petitioner disagrees with the magistrate judge's decision to deny his various motions, including motions for bail, "summary disposition," appointment of counsel, and an evidentiary hearing. Third, Petitioner disagrees with the magistrate judge's denial of his motion for production of records. Fourth, Petitioner argues that the magistrate judge failed to review the jury instructions

employed in the trial court that convicted him, and that the state trial judge "failed to properly instruct the jury that the charges are based upon the mandatory presumption of the fact that murder and/or rape occurred." Fifth, Petitioner contends that one of the jurors whom sat on the jury that convicted him, a nurse, committed misconduct by using her own medical opinions, "deliberating before the defense even rested its case," and exercising "maximum influence on the other [jurors]." Sixth, Petitioner claims that the magistrate judge failed to review the sufficiency of the circumstantial evidence presented by the prosecution "to implicate the Petitioner as the perpetrator."

**A. Objections One, Two, and Three**

In Objections One, Two, and Three, Petitioner challenges the magistrate judge's rulings with respect to several nondispositive pretrial matters. Fed. R. Civ. P. 72(a) provides in relevant part:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

The several rulings challenged by Objections One, Two, and Three were made on May 4, 2011, and December 2, 2011. *See* docket entry of May 4, 2011, and ECF No. 20. Petitioner did not file objections, however, until February 8, 2013, more than two years later. ECF No. 23. Therefore, Objections One, Two, and Three are untimely, and, therefore, overruled.[2]

---

[2] Although Petitioner complains, in Objection One, that the magistrate judge granted the State's motion for an extension of time to file a return of writ before Petitioner could file an opposition, the Court notes that Petitioner nevertheless filed an opposition less than fourteen days after the State's motion was granted. ECF No. 11. To the extent that this opposition can be considered a timely objection in accordance with Fed. R. Civ. P. 72(a), it is overruled. The magistrate judge's order was neither clearly erroneous nor contrary to law. The State argued that an extension of time was necessary because it had not yet received all of the state court records. ECF No. 4. Although the State acknowledged that it filed the motion for extension of time one day after the return of writ was due, it asked the Court to excuse its "neglect" and

**B. Objections Four and Five**

Objection Four raises a claim of improper jury instructions. Objection Five raises a claim of juror misconduct. These objections are not responsive to the magistrate judge's report. In fact, Objections Four and Five assert new grounds for relief that were not set forth in the habeas petition, and, consequently, the magistrate judge had no opportunity to address them. Because these new grounds for relief are not properly before the Court, they are overruled.[3] *See Range v. Chatman*, No. 1:10CV118, 2013 WL 3449048 at *2 (M.D. Ga. July 9, 2013) ("Petitioner may not amend his federal petition *via* an objection to the magistrate's recommendation"); *Prater v. Pennsylvania*, No. 11CV07893, 2013 WL 461702 at *1 (E.D. Pa. February 7, 2013) (overruling objection where "objection raises new claims and arguments not contained in . . . habeas corpus petition"); *D'Aprice v. Woodring*, No. CV 08 1526, 2009 WL 412111 at *1 (C.D. Cal February 12, 2009) ("[i]n his Objections, Petitioner raises a new ground for relief . . . which was not set forth in his original petition. The Court will not consider it."); *Gonzalez v. Garvin*, No. 99 Civ. 11062, 2002 WL 655164 at *2 (S.D.N.Y. April 22, 2002) (dismissing objection "because it offers a new legal argument that was not presented in . . . original petition" and because "[t]o consider new legal arguments at this point would undermine 'the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.'").

---

"inadvertence." ECF No. 5. Nothing in Petitioner's opposition docketed at ECF No. 11 shows why, in the interest of justice, and for the purpose of properly adjudicating this petition, the extension sought by the State should not have been granted.

[3] In any event, these claims were never asserted in the state court proceedings, depriving the state courts of the opportunity to address the claims first. Therefore, even had they been properly asserted in the habeas petition, they would be procedurally defaulted. *Smith v. State of Ohio Department of Rehabilitation & Corrections*, 463 F.3d 426, 430-31 (6th Cir. 2006) ("[t]he federal court will not review claims that were not entertained by the state court . . . due to the petitioner's failure to raise those claims in the state courts while state remedies were available").

**C. Objection Six**

Objection Six asserts that the magistrate judge "failed to review the sufficiency of [the] [circumstantial] evidence presented to implicate the Petitioner as the perpetrator." ECF No. 23 at 3. Petitioner misapprehends the role of the federal habeas court, which is subject to AEDPA's deferential standards and is not a second forum for Petitioner to seek direct review of his criminal conviction. Petitioner also does not address, by way of his objection, the magistrate judge's specific determination, namely, that the Ohio Court of Appeals did not unreasonably apply *Jackson* when concluding that the evidence was sufficient to convict Petitioner of rape and murder. In addition, the magistrate judge *did* appropriately review the evidence examined by the appeals court in assessing whether that court unreasonably applied federal law. *See* ECF No. 21 at 15-17.

In *Jackson*, the United States Supreme Court noted that the Due Process Clause of the Fourteenth Amendment "protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (internal quotations omitted). The *Jackson* court held that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction" is to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). If circumstantial evidence was used, then that evidence must have been sufficient. *Id.* at 324-25.

This Court's role in deciding whether federal habeas relief should be granted is to determine whether the Ohio Court of Appeals' application of *Jackson* was "an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."[4] *Harrington, at* 131 S. Ct. 786-87.  The appeals court reviewed the record, which disclosed that three medical professionals testified on behalf of the prosecution.  Dr. Bertin testified that Petitioner's daughter had sustained "blunt force trauma" in her vagina that was caused by "some object . . . forced up into the area at low velocity."  ECF Nos. 14-1 at 96; 14-4 at 200, 204.  Dr. Murthy testified that the infant's injuries occurred prior to her death.  ECF Nos. 14-1 at 96; 14-4 at 811.  Dr. Kohler testified that the infant's injuries were not caused by the speculum used by Dr. Bertin and was not consistent with an infection.  ECF Nos. 14-1 at 96-97; 14-4 at 1199-1202.  Both Dr. Bertin and Dr. Murthy performed physical examinations of the infant's body.  ECF Nos. 14-1 at 97; 14-4 at 750-51.  The testimonies of Drs. Bertin, Murthy, and Kohler stand in stark distinction to the testimony of the defense expert, Dr. Spitz, who testified on the basis of reports, photographs, and microscopic slides, that the injuries to the infant were caused by the speculum used by Dr. Bertin and that the redness observed in the infant's genital area was caused by an infection, not trauma.  ECF Nos. 14-1 at 97; 14-4 at 1128, 1147-1149.  The appeals court concluded that the jury was entitled to believe the testimonies of the prosecution's experts, two of whom directly observed the infant's body and performed the physical examinations, over the testimony of Dr. Spitz, whom did neither.  ECF No. 14-1 at 97.

Regarding the cause of death, Dr. Murthy testified on the basis of his personal observations

---

[4] Although the Ohio Court of Appeals did not explicitly cite *Jackson*, it cited *Jenks*, an Ohio Supreme Court case that follows *Jackson*'s basic proposition of law.  *See* ECF No. 14-1 at 93; *see also State v. Jenks*, 61 Ohio St.3d 259, 259-69, 574 N.E.2d 492 (1991) ("[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt").  Moreover, the Court notes that even in instances when a state court's denial of a federal claim is unaccompanied by an explanation, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington*, 131 S. Ct. at 784-85.

during the autopsy that the infant was asphyxiated by smothering. ECF Nos. 14-1 at 98; 14-4 at 767. He observed pallor or blanching on the infant's face that indicated that "some type of pressure" was applied on the infant's nose, lips, and chin prior to death. ECF No. 14-1 at 98; 14-4 at 739. Dr. Kohler also opined that the pallor around the infant's face indicated that pressure had been placed there. ECF Nos. 14-1 at 98; 14-4 at 1197-1198. Dr. Murthy rejected the cause of death suggested by Petitioner, whom told police officers that a blanket had tightly wound itself three times around the infant's neck. ECF Nos. 14-1 at 98; 14-3 at 123. There was evidence that the infant could not roll over by herself. ECF No. 14-1 at 98; 14-4 at 258. Dr. Murthy also opined that if the cause of death was strangulation by a blanket, there would have been ligature marks on the infant's neck, which were not present. ECF No. 14-1 at 98; 14-4 at 766. The testimonies of Drs. Murthy and Kohler stood against that of Dr. Spitz, who could not say that the infant's death was not a result of the hands of another person, but stated that he would have expected different markings on the infant, such as finger markings. ECF No. 14-1 at 98. Again, the appeals court determined that the jury was entitled to believe the testimonies of Drs. Murthy and Kohler, particularly because Dr. Murthy's opinion was formed after directly observing the infant's body during the autopsy. ECF No. 14-1 at 99.

Finally, the appeals court determined that the circumstantial evidence from the night of June 4 and 5, 2006, was sufficient for the jury to rule out the possibility that anyone other than Petitioner was the perpetrator. ECF No. 14-1 at 99. The jury heard evidence that the infant was fed between 7:00 and 8:00 p.m., and that around 8:30 p.m., Petitioner carried the infant and her two-year old brother upstairs to the children's bedroom and put them to bed. ECF No. 14-4 at 130, 862-866. Petitioner and his wife, Diane Biggs, slept in a separate bedroom upstairs. ECF No. 14-4 at 864. The only person who saw the infant alive from the time she was carried upstairs was Petitioner; he

was also the one who found the infant dead the next morning around 7:00 a.m. ECF Nos. 14-1 at 99; 14-4 at 141-42. Diane never checked on the infant after the child was put to bed on the night of June 4, 2006. ECF Nos. 14-1 at 99; 14-4 at 136. Petitioner was the only person in the infant's room during that night and in the subsequent morning. ECF No. 14-1 at 99. Dr. Murthy testified that the time of the infant's death occurred one to one-and-a-half hours after the infant's feeding, based on an analysis of the contents that was contained in her stomach. ECF No. 14-4 at 756-57.

The only other person who was living in Petitioner's house at that time was Amber Shue, a friend of Diane. ECF No. 14-4 at 127-28. Amber did not have a key to the house, was staying with a friend overnight on the evening in question, and was not seen by anyone at the house after Petitioner and his wife retired for the night. ECF Nos. 14-1 at 99; 14-4 at 76-77, 138. In fact, at 10:27 p.m. that night, Amber was at a hospital with a toothache. ECF No. 14-1 at 99; 14-4 at 52. Another individual, Pat Smrekar, was present at the home from around 9 p.m. to 1 a.m. ECF No. 14-4 at 132. Petitioner and Diane had invited Pat over for an "intervention" with Amber. ECF No. 14-4 at 131. Diane testified that the purpose of the intervention was "pretty much to tell [Amber] either you want to be with Pat or you don't. [Because] she would come home almost everyday crying, saying Pat did this to me and did that to me . . . ." ECF No. 14-4 at 131. After Diane contacted Amber and found out that she was at a hospital and was not coming home, Pat left. ECF No. 14-4 at 136-38. The jury heard evidence that Pat did not ever go upstairs while he was at the home. ECF Nos. 14-1 at 99; 14-3 at 119; 14-4 at 77, 135-36. The jury also heard testimony from an investigating officer that the police examined the home for signs of illegal entry but did not uncover "any signs that there was . . . an intrusion attempt." ECF No. 14-3 at 84.

Finally, the appeals court noted that the jury was presented with evidence of Petitioner's "questionable" behavior. ECF No. 14-1 at 100. One police officer responding to the 911 call placed

in the morning of June 5, 2006, found Diana crying hysterically but described Petitioner as "nervous" and "jumpy." ECF No. 14-3 at 115. Later that day, before Diane was to be interviewed by a detective at the police station, Petitioner warned her "not to say anything [she] didn't know." ECF No. 14-4 at 153. Shortly after June 5, Petitioner told a convenience store employee that "the police are trying to tell me that my DNA is inside the baby." ECF No. 14-4 at 342. Petitioner also called the coroner's office and said he might not be able to make funeral arrangements for his daughter because he might be in jail. ECF No. 14-4 at 709-710. Petitioner also threatened his wife by telling her that "[i]f she went and turned against him, then he'd turn against [her]." ECF No. 14-4 at 166. In another instance, when Diane was out shopping for a dress in which to bury her daughter, Petitioner called and instructed her "to ask [her] mom not to say anything" about a rolled up diaper. ECF No. 14-4 at 157.

*Jackson* required the Ohio Court of Appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found, beyond a reasonable doubt, that Petitioner raped and asphyxiated his daughter. *Jackson*, 443 U.S. at 318-19. Based on the foregoing evidence, the Court concludes that the appeals court's application of *Jackson* was not objectively unreasonable and not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Therefore, Objection Six is overruled.

### IV. Conclusion

Based on the foregoing, the Court adopts the report and recommendation of the magistrate judge, overrules all of Petitioner's objections, and dismisses the petition for writ of habeas corpus.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision

could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      IT IS SO ORDERED.

| | |
|---|---|
| January 15, 2014 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |